**UNITED STATES of America, Appellee,**

v.

**WOO, et al., Defendants,**

**Chumpol Eampanit, Jin Liang Toon, Defendants–Appellants.**

**Nos. 100, 101, Dockets 90–1099, 90–1153.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1990.

Decided Oct. 23, 1990.

Stuart D. Rubin, Brooklyn, N.Y., for defendant-appellant Chumpol Eampanit.

Colleen P. Cassidy (The Legal Aid Society, New York City, of counsel), for defendant-appellant Jin Liang Toon.

Alan M. Vinegrad, Asst. U.S. Atty. for the E.D. of N.Y. (Andrew J. Maloney, U.S. Atty. for the E.D. of N.Y., Susan Corkery, Jacques Semmelman, Asst. U.S. Attys., of counsel), for appellee.

Before KAUFMAN, WINTER and MINER, Circuit Judges.

PER CURIAM:

Following a jury trial before Judge Dearie, appellants Chumpol Eampanit and Jin Liang Toon were convicted of having participated in a large heroin conspiracy. We discuss each appellant's claim seriatim.

First, Eampanit argues that the evidence against him was legally insufficient. We disagree. The evidence showed that Eampanit, a former loan officer and manager of a finance and trust company, traveled from California to New York to earn $40,000 for one week's work as a driver. On one night during that week, he participated in a delivery of some $2.3 million in cash. The evidence established that the $2.3 million were the proceeds from a heroin conspiracy and that Eampanit was told that it was "hot money." Eampanit's claim is that the government failed to prove that he knew that the money was proceeds from heroin sales. He speculates that it might have come from other crimes such as gambling, prostitution, stolen property or marijuana.

In assessing the sufficiency of evidence, we draw all reasonable inferences in favor of the government. *See, e.g., United States v. Roman,* 870 F.2d 65, 71 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989). We believe that the jury reasonably found that the vast abundance of cash alerted Eampanit to the nature of the conspiracy in which he was engaged. We, like the jury, are unpersuaded that Eampanit might have believed that the other crimes he catalogues would yield $2.3 million in so short a period of time or justify the payment of $40,000 for one week's services as a driver. The jury thus was entitled to infer that Eampanit knew that he had joined a major narcotics conspiracy. We affirm his conviction.

Second, Toon argues that the district court erred by excluding from consideration by the jury the fact that Agent Doyle, the case agent, had included in his affidavit supporting the complaint and in his grand jury testimony descriptions of Toon's conduct at the time of his arrest that were erroneous. Agent Doyle's affidavit and grand jury testimony were not based on personal knowledge, but rather on information obtained from law enforce-

ment sources. For that reason, the affidavit and grand jury testimony may well have been a statement of which the government had "manifested an adoption or belief in its truth." Fed.R.Evid. 801(d)(2)(B); *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984) (prior inconsistent opening statement admissible at a subsequent trial as a party admission under Fed.R.Evid. 801(d)(2)(B) and (C)).

However, we believe that it was within the district court's discretion to exclude this evidence on the ground that its probative value was outweighed by the danger of prejudice or confusion of the issues. The government's case against Toon rested almost entirely on the testimony of Ming, a co-conspirator who became available as a witness only at the time of trial. The evidence concerning Doyle did not undermine Ming's testimony because that testimony did not concern the events surrounding Toon's arrest. Doyle's version was inconsistent with the trial testimony of another agent, Lewis, but Lewis's testimony was of marginal importance compared to that of Ming. Moreover, the jury was made fully aware of the fact that substantial discrepancies existed between Lewis's testimony at a suppression hearing and his testimony at trial. Evidence concerning Doyle's affidavit and testimony would have added little to this impeachment of Lewis, particularly since it was not shown that Doyle's mistakes were based on information from Lewis.

At best, therefore, the evidence in question would have shown that misinformation had been given to Doyle by someone connected with the investigation. This misinformation, however, did not concern the core of the evidence against Toon and might well have caused the jury to draw unsubstantiated inferences concerning the conduct of the government agents. It might also have confused the issues with what was essentially a red herring. In contrast, the inconsistency in *McKeon* involved a fabrication in which the defendant had participated and which indicated his consciousness of guilt. The question is a close one, but exclusion of the evidence concerning Doyle was within the district court's discretion.

Affirmed.